THE FOLLOWING ORDER
IS APPROVED AND ENTERED
AS THE ORDER OF THIS COURT:

DATED: September 24, 2014

G. Michael Halfenger
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In the matter:

    Calvin Brown and           Case No. 13-35593-GMH
    Virginia Brown,

        Debtors.                 Chapter 13

**DECISION AND ORDER ON TRUSTEE'S OBJECTION TO PLAN CONFIRMATION**

The trustee objects to confirmation of the debtors' proposed chapter 13 plan contending that the plan does not provide sufficient payment to unsecured creditors. The trustee argues that the debtors must increase the amount they will commit to pay unsecured creditors by paying into the plan (i) any increase in the cash surrender value of their whole life insurance policy, and (ii) an additional $25 per month, which reflects the trustee's view that their recreation expense, which the debtors budgeted at $125 per month, should be no more than $100 per month. For the reasons that follow, I overrule the objection.

I

The following facts are not in dispute. The Browns, who are debtors with below-median income, filed this chapter 13 case on December 3, 2013. Their schedules disclose a whole life insurance policy valued at $3,000. Their budget reflects the following: $1,402.31 per month of wage income, $1,540.00 per month of social security income, and $2,556.04 per month of pension income.

Their proposed plan pays administrative expenses and almost $50,000 for a vehicle. It estimates that unsecured creditors will receive $2,372.46, to be distributed *pro rata* over life of the plan, resulting in roughly a seven-percent dividend to general unsecured creditors.

II

Section 1325(b)(1)(B) of Title 11 requires that when the trustee or an unsecured creditor objects to plan confirmation, the plan must provide that "all of the debtor's projected disposable income to be received in the applicable commitment period . . . be applied to make payments to unsecured creditors." 11 U.S.C. §1325(b)(1)(B). The Code does not define "projected disposable income," but "disposable income" is defined as "current monthly income received by the debtor . . . less amounts reasonably necessary to be expended . . . for the maintenance and support of the debtor", charitable contributions, and business expenses. 11 U.S.C. §1325(b)(2). "Current monthly income" is also defined: It means the "average monthly income from all sources that the debtor receives . . . without regard to whether that income is taxable income, derived during the 6-month period ending on" the last day of the month before the debtor filed the case, excluding "benefits received under the Social Security Act". 11 U.S.C. §101(10A).

Current monthly income, therefore, requires a backward-looking calculation and excludes social security income. And, again, for below-median debtors, "disposable income" is current monthly income less expenses that are "reasonably necessary . . . for the maintenance and support of the debtor". §1325(b)(2). "Projected disposable income" is typically calculated by multiplying a debtor's disposable income by the number of months in her proposed plan's commitment period. See *Hamilton v. Lanning*, 560 U.S. 505, 513 (2010). In calculating projected disposable income the bankruptcy court may

2

adjust the amount derived by multiplying disposable income by the number of plan months to "account for changes in the debtor's income or expenses that are *known or virtually certain at the time of confirmation.*" *Id.* at 524 (emphasis added).

The debtors calculated their current monthly income as $4,188.49. The trustee does not contest this, nor does he allege that the debtors received income from their whole life insurance policy during the look-back period that they failed to include in their current-monthly-income calculation. As a result, the debtors' disposable income is $4,188.49 per month, less reasonably necessary expenses.

The trustee's brief contends in passing that whole life insurance premiums are unreasonable expenses because whole life insurance has an investment component. CM-ECF No. 29, 3. But the trustee leaves this argument undeveloped. He concedes that premiums for term life insurance are a reasonable expense. And he makes no effort to establish whether the debtors are paying more than similarly situated persons would pay for term insurance, nor does he propose to quantify the amount of any differential that might exist. These failures doom any argument that the Browns' disposable income is too high because it includes an unreasonable insurance premium expense. To resolve an argument that the portion of insurance premiums in excess of the cost of term insurance is an unreasonable expense, it would minimally be necessary to conduct fact-finding into the comparative costs of term and whole life insurance under the debtors' specific circumstances. The trustee does not propose that course.

The trustee instead argues that the "cash surrender value of a whole life insurance policy is income [and that] . . . this income is predictable." CM-ECF No. 29, 4. But an unrealized increase in an asset's value is generally not understood to be "income." See *Eisner v. Macomber*, 252 U.S. 189, 207 (1920). Section 1325(b), moreover, defines "disposable income" as "current monthly income *received* by" the debtor. (emphasis added). The section's use of "received by" supports the notion that increases in the value of a debtor's assets are not "income" for purposes of determining disposable income.

Consistent with the text and the understanding of "income" dating back at least as far as *Eisner v. Macomber*, courts have repeatedly held that "[o]nly regular income and substitutes therefor can be counted in the determination of disposable income for

3

the purposes of the chapter 13 test." See *In re Burgie,* 239 B.R. 406, 410 (9th Cir. B.A.P. 1999). "The test is whether the asset in question is an anticipated stream of payments. If it is a stream of payments, the payments must be included in projected income. If the asset is not a stream of payments, it is not included." *Id.*; see also *In re Ash'shadi*, No. 04-55924, 2005 WL 1105039, *2 (Bankr. E.D. Mich. May 6, 2005); *In re Golek*, 308 B.R. 332, 337–38 (Bankr. N.D. Ill. 2004) (*dicta*). The trustee does not contend that the Browns will receive a stream of payments from their whole life insurance policy; he simply wants to cast the policy's increased cash surrender value as "income." That casting fails the *Burgie* test.

Even if the increase in cash surrender value were somehow income, the trustee does not explain how that income becomes a component of projected disposable income, which is what §1325(b)(1)(B) affords the trustee the right to demand be paid to unsecured creditors. The trustee does not argue that this future income should be included in current monthly income—nor would it be sensible to so argue, given that current monthly income is determined based on the debtors' income during the look-back period. Because the trustee doesn't dispute the Browns' current-monthly-income calculation, he must be urging the court to project that their disposable income during the plan's commitment period will be higher than during the look-back period because of a presumed increase in the cash surrender value of the debtors' whole life insurance.

But the trustee has provided no evidence that a change in the Browns' income is, as *Lanning* requires, "known or virtually certain" at the time of confirmation. 560 U.S. at 524. To the contrary, the trustee points only to an expected future increase in the value of an asset owned by the debtors. If an increase in surrender value counted as income, one would have to account for increases in surrender value during the look-back period when calculating current monthly income, thus disposable income. Only then could one decide whether there is a basis for adjusting disposable income based on a known or virtually certain increase in surrender value during the plan term. The trustee ignores all this.

Consequently, the trustee's objection based on the plan's failure to provide for payments reflecting increases in the surrender value of the debtors' whole life insurance is not well stated.

4

## III

The trustee's argument that the debtors' claimed recreation expense is too high also fails. The Browns are below-median debtors. So, whether an amount they spend on their maintenance and support is reasonable must be determined based on the totality of the facts, rather than by looking to IRS standards, as provided in 11 U.S.C. §707(b)(2). See 11 U.S.C. §1325(b)(3). See also *New York City Employees' Retirement Sys. v. Sapir (In re Taylor)*, 243 F.3d 124,129 (2d Cir. 2001); *In re Bruce*, 484 B.R. 387, 389-390 (Bankr. W.D. Wash. 2012); *In re Woodman*, 287 B.R. 589, 593 (Bankr. D. Me. 2003).

The trustee does not argue that any recreation expense is unreasonable for purposes of calculating projected disposable income. And neither the trustee nor the debtors have presented any evidence regarding the reasonableness of the claimed expenses. Instead, both treat the question whether the Browns' $125-per-month recreation expenditure is reasonable—or whether it should be limited to $100 per month—as one that can be decided without any evidence. That misunderstands the nature of the inquiry, which requires evidence about the totality of the circumstances surrounding the Browns' recreation expenditures.

Ordinarily an evidentiary hearing would be required to decide whether $125 per month is a reasonable recreation expense, but the trustee's objection fails for a different reason. The debtors' budget lists expenses totaling $4,841. Deducting the recreation expense of $125, the only expense to which the trustee objects, yields expenses of $4,716. As mentioned above, the debtors' uncontroverted current monthly income is $4,188.49. Therefore, even if I were to disallow the entire recreation expense as unreasonable, the Browns' disposable income would be *negative* $527.51 (income of $4,188.49 minus expenses of $4,716).

Because the Browns' disposable income is negative absent any recreation expense, the Browns' proposed plan, which provides for a minor dividend to unsecured creditors, does not offend §1325(b)(1)(B)'s requirement that they commit all of their projected disposable income received during the commitment period to paying unsecured creditors. Their projected disposable income is $0. They propose a plan that pays unsecured creditors more than that.

5

## IV

The gist of the trustee's objections to the Browns' plan is captured by two propositions stated in his reply brief: "Debtors are required to contribute all of their [projected] disposable income into the plan. If debtors are contributing all of their disposable income each month to paying back their creditors, they are unable to create a savings account." CM-ECF, No. 33, 4. The first proposition is correct, but the second doesn't follow from it. Section 1325(b) defines "disposable income" in a way that in theory leaves some below- and above-median debtors with the ability to save funds during the plan period. Below-median debtors who receive social security income that is excluded from the definition of "current monthly income" can, subject to §1325(a)(3)'s good-faith constraint, opt not to use social security income to pay unsecured creditors. This is a congressional choice, and it isn't all that surprising given that creditors are unable through judicial process to collect from a debtor's social security income outside of bankruptcy. See 42 U.S.C. §407(a). And, because §1325(b) defines "disposable income" of above-median debtors based on IRS expense guidelines, above-median debtors who spend less than those guidelines allow may also put aside funds for a future rainy day rather than committing them to pay unsecured creditors through a chapter 13 plan, again subject to whatever constraint §1325(a)(3) might impose. See *In re Uhlig*, 504 B.R. 916, 921 (Bankr. E.D. Wis. 2014).

The trustee has elected not to challenge whether the Browns propose their plan in good faith—a challenge that would require an examination of the totality of circumstances surrounding the Browns' proposal. Like the inquiry into reasonableness of an expense, good faith largely depends on the circumstances—that is, on the facts. The agreed facts here do not hint at bad faith, and, in all events, neither side has proposed a need for an evidentiary hearing; they instead offer only legal arguments. None of those legal arguments justifies denying confirmation.

6

V.

For these reasons,

IT IS ORDERED that the trustee's objection to confirmation of the debtors' proposed chapter 13 plan is OVERRULED.

#####